## Gamber *versus* Gamber.

1. In a contest between a vendee of the administrators of an insolvent husband's estate and the widow, as to a claim by her to an article of personal property, the declarations of the husband that the property belonged to his wife, are not admissible on the part of the wife;—and that the administrators did not include it in the inventory of the estate, is entitled to no weight against their vendee; especially if omitted in consequence of the claim to it by the widow.

2. Where personal property is thus claimed by a married woman, she must prove her title by evidence which does not admit of a reasonable doubt.

3. In order to establish the claim of a feme covert or widow to personal property as against the administrators of the estate of the husband or their vendee, it is not necessary for her to show that she had exclusive possession of the same whilst living with her husband.

ERROR to the Common Pleas of *Lancaster county.*

This was an action of replevin by Martha Gamber *v.* Henry Gamber, to recover a one-horse carriage, of the value of $110. The property was delivered to the plaintiff, and the *narr.* was in the usual form for detaining the property.

On the trial, it was shown that John Gamber, the husband of the plaintiff, in company with his wife, in the fall of the year 1848, went to the shop of Christian Landis, and after examining certain carriages, ordered Landis to make him one of a particular pattern, for the sum of $110. Landis made one, and delivered it to Gamber. Shortly afterwards, John Gamber died intestate, and at the time of the taking of the inventory, Martha Gamber, his widow, claimed the carriage as belonging to her, upon the ground that she had given her husband the money to pay for it. Upon this representation, it was not included in the appraisement by the administrators; but upon a demand being afterwards made upon them by Christian Landis for the payment of the carriage, they paid for it. The estate proving insolvent, the administrators sold the carriage at public sale to the defendant below, for $60.

Testimony was given that the deceased intestate, upon several occasions, when asked for the loan of the carriage, said, "go and ask the wife; it is hers; she gave me the money to pay for it."

The omission of the carriage in the inventory being proved on the part of *the plaintiff*, it was offered, on part of defendant, to prove that no part of the personal estate which the plaintiff owned *before* marriage was included in it. This was rejected.

The Court permitted the administration account on the estate of John Gamber to be given in evidence on the part of *the plaintiff*. This was objected to as irrelevant and calculated to mislead the jury.

The cause was tried at January Term, 1852, when a verdict was rendered for the plaintiff.

[Gamber *v.* Gamber.]

Upón the trial, the following point was submitted by the counsel *for defendant,* viz. :

"That as it appears from the testimony that John Gamber purchased the carriage in dispute on his own credit, and the same was delivered into his possession by the maker, and so remained without any apparent change in the possession till his death, and his estate is insolvent, his administrators acting as trustees for his creditors, had a right to retain the same against plaintiff; and as against them and the creditors the plaintiff has no right of property in the carriage, and the defendant is entitled to a verdict in his favor."

It was answered as follows:

"If you are satisfied from the testimony that John Gamber purchased the carriage in dispute, and retained the possession of the same in the manner set forth in the defendant's point, and that John Gamber's estate is insolvent, our answer then is, that his administrators, acting as trustees for his creditors, had a right to retain the same against plaintiff, and as against them and the creditors, the plaintiff has no right of property in the carriage, and the defendant is entitled to a verdict."

LONG, J., charged the jury, *inter alia,* as follows:

"The Act of 11th April, 1848, relating to married women as regards their separate estate, places them in the same situation as single women. They can make contracts with their husbands. If, therefore, there actually was a purchase made by the plaintiff from her husband—money actually paid to the husband—and in this case, if the estate was insolvent, possession delivered over to her, she would have a right to the carriage.

"Several witnesses were examined on the part of the plaintiff, to show that the carriage in dispute was recognised by her husband as belonging to her, and also by his administrators since his death; that she was possessed of a separate estate, and that her husband acknowledged that it belonged to her; and that she gave him the money. On the other hand, it is shown that the carriage was paid for by her husband's administrators after his death.. These are all facts for you to take into consideration in deciding upon this case, so far as regards the sale of the carriage. But if this estate has been proven to you *to be insolvent,* as it is alleged, then another question arises, and that is, had the plaintiff the open possession of this carriage." He charged that if she had not the possession of the carriage during the marriage, she was not entitled to recover.

Verdict was rendered for the plaintiff in the suit.

Error was assigned to the overruling of the evidence offered to show that no part of the personal effects which the widow owned

[Gamber *v.* Gamber.]

before marriage, were included in the inventory. It was submitted, that as Gamber and wife were married before the Act of 1848, the evidence offered was competent to explain the fact that the carriage was not included in the inventory, and to avoid its influence as an act of the defendant.

Error was also assigned to the permission to receive the administration account in evidence as irrelevant: also to the answer of the Court to the point submitted on part of defendant; and that the judge erred in submitting to the jury whether there was a purchase of the carriage originally, by the plaintiff with her own money, or a subsequent sale of it to her by her husband, and a reduction of it into her absolute possession.

*Franklin* and *Ford*, for plaintiff in error.—The testimony showed that the carriage was ordered by John Gamber for himself; that it was paid for by the administrators of his estate; that there was no proof of an after sale of the carriage by Gamber to his wife, and no reduction of the carriage into her exclusive possession.

*A. Herr Smith*, for defendant.—John Gamber got $100 to pay for the carriage on a note which was *her separate estate*. That she had possession of it was proved by her having the control over it, keeping the key of the carriage house. The question of ownership and possession was a matter of fact.

The opinion of the Court was delivered, May 20, by

BLACK, C. J.—John Gamber died insolvent. His widow claimed a carriage as her separate property. If there is any evidence on the record to show that it was hers, this judgment must be affirmed.

The husband said, before the carriage was bought, that his wife was going to give him the money to pay for it, and declared afterwards that she had done so. When asked for the loan of it he referred the applicants to his wife, and said the carriage belonged to her. The administrators of the husband did not include it in the appraisement of his effects, because the widow told them she owned it.

Declarations of an insolvent husband cannot, under any circumstances, be evidence for the wife. It would open the door to enormous frauds upon creditors, and hold out a constant temptation to commit them. If the husband could create title to personal property in the wife by merely saying it is hers, no creditor would be safe for a single moment. It is not easy to conceive how a higher premium for dishonesty could be offered. The relation of husband and wife is so intimate, and the identity of their interests so absolute, that even the oath of one is not and ought not to be taken in favor of the other. *A multo fortiori* the naked declaration should be rejected.

2 H 2

[Gamber *v.* Gamber.]

The case now before us furnishes a strong illustration of the principle; and shows how little reliance can be placed on such declarations. The assertions of John Gamber were all on one side, and the established facts were all on the other. He said in substance that his wife bought the carriage, while the proof is unquestionable and full that he made the contract himself on his own credit; that it was charged against him on the books of the manufacturer; and that it was paid for by his administrators, out of his estate.

The consent of the administrators not to put it into the inventory is entitled to still less weight than the declarations of the decedent. Personal representatives who know nothing about the estate are not to be held to a mistake made in ignorance of the truth, especially where they are misled by the statement of the person who seeks the advantage of it. Besides, it is not their interest, but that of creditors, which is looked to in a case like this.

Where property is claimed by a married woman, she must show by evidence which does not admit of a reasonable doubt, either that she owned it at the time of her marriage, or else acquired it afterwards by gift, bequest, or purchase. In the case of a purchase after marriage, the burden is upon her to prove distinctly that she paid for it with funds which were not furnished by the husband. Unless rigid proof of her title is always required, no one can calculate the amount of injustice which the Act of 1848 will produce.

On the facts which appear in this case, the Court below ought to have given a charge which would have swept away the plaintiff's claim in a single breath. She had no shadow of right to recover.

In another respect the charge was more favorable to the defendant than he had any just reason to look for. The Court said that, as to possession, a husband and wife are subject to the same rule which governs strangers. Between strangers, open, visible, notorious, and exclusive possession is the test of title in all cases where the rights of creditors are involved. But this is not possible with reference to the personal goods of a married woman. She cannot have or use her property exclusively, unless she lives apart from her husband. It was not the intention of the legislature to compel a separation in order to save the wife's rights; but if the rule of exclusive possession were adopted, the statute would be inoperative as long as they live together.

But this shows how necessary it is to demand the clearest proof of the wife's original right. Since no other evidence of her title can be furnished than her purchase of it with her own money, nothing can be dispensed with which may be required to exclude even a suspicion of unfairness or collusion.

Judgment reversed and *venire facias de novo* awarded.