## Laughlin *v.* Laughlin.

*Trust and trustees—Husband and wife—Wife's property in husband's name—Evidence—Laches.*

Where a wife claims as her own, securities standing in the name of her deceased husband, she cannot establish a trust in such securities for herself as against her husband's creditors, unless she shows by clear

and satisfactory evidence that when they were purchased by him, she had a separate estate, that it was used by him in purchasing them, and that he purchased them for her. In such a case witnesses for the wife may testify as to what the husband had stated to them as to his trusteeship for his wife, and what he actually did and wanted done in connection with his management of her estate.

A wife cannot be charged with laches in delaying for eleven months to file a bill in equity to have a trust declared in her favor as to certain securities standing in her husband's name, but claimed to have been bought with her money, where it appears that such securities, with others standing in her own name, were in a box to which she had the key, and in this box was a statement in the handwriting of her husband headed " List of stocks and notes " of the wife, naming her, and naming himself as " trustee of " the wife, and it also appears that the wife was old, blind, had been bedridden for years, and was of frail mind.

Argued Nov. 12, 1907. Appeals, Nos. 185 and 190, Oct. T., 1907, by W. C. Stewart and Margaret B. Laughlin, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1906, No. 102, on bill in equity in case of Margaret B. Laughlin v. H. M. Laughlin, Administrator, et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to declare a trust in securities. Before MILLER, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court entered a decree declaring that certain stocks enumerated were the sole and separate property of the plaintiff, and directing the defendant administrator to execute proper assignments thereof to the plaintiff; and also adjudging that certain other shares were the property of the estate of F. B. Laughlin, and directing the plaintiff to deliver the certificates for such shares to the defendant.

*Error assigned,* by William C. Stewart, was portion of the decree declaring a trust in favor of the plaintiff.

*Error assigned,* by Margaret B. Laughlin, was the portion of the decree requiring her to deliver certain certificates to the defendant.

*R. H. Hawkins,* of *Dalzell, Fisher & Hawkins,*. for W. C. Stewart.—Property of a husband is not to be covered up or withheld from creditors upon equivocal suspicions or doubtful evidence of a wife's right to it: Rhinesmith's Case, 25 Pa. Superior Ct. 300; Byers v. Ferner, 216 Pa. 233; Dice's Estate, 180 Pa. 647; Dalley's Est., 200 Pa. 140; Martin's Est., 181 Pa. 378.

All the stocks in controversy were bought by Mr. Laughlin and the certificates issued in his name more than five years before the bill was filed, except the crucible steel stock and the wool company stock. The trust was barred: Campbell v. Boggs, 48 Pa. 524; Fleming v. Culbert, 46 Pa. 498; Byers v. Ferner, 216 Pa. 233; McKendry v. McKendry, 131 Pa. 24.

*George B. Gordon,* with him *Wm. Watson Smith,* for Margaret B. Laughlin.—The ownership of the wife of the property, the existence of the trust, may be proved by any sort of competent evidence; it may be proved by the declarations of the husband: Wormley's Estate, 137 Pa. 101; Byers v. Ferner, 216 Pa. 233; Harrisburg Bank v. Tyler, 3 W. & S. 373; Nichols v. Nichols, 149 Pa. 172; Lloyd v. Woods, 176 Pa. 63; Farrell v. Lloyd, 69 Pa. 239; DeRoy v. Richards, 8 Pa. Superior Ct. 119.

The testimony as to Laughlin's financial condition, the improbability, nay impossibility, of his buying the stock is very persuasive of the truth of our contention: Hamill's Appeal, 88 Pa. 363; Wadlinger v. First Natl. Bank, 209 Pa. 197; Shattuck v. American Cement Co., 205 Pa. 197.

Opinion by Mr. Justice Brown, January 6, 1908:

This bill was filed by Margaret B. Laughlin, the widow of F. B. Laughlin, to have a trust declared in him for her at the time of his death in certain stocks, the certificates for which stood in his name. Some of them had been issued to him as trustee, without naming the cestui que trust. An answer was filed by his administrator, demanding proof of the allegations of the bill and refusing to assign and transfer the stocks to the complainant until her ownership of them was established. F. B. Laughlin died insolvent. W. C. Stewart, one of his creditors, was permitted to intervene as a defendant and filed

an answer, averring that the certificates of stock claimed by the appellee were assets of her husband's estate, primarily subject to the claims of creditors, including his own. Upon hearing there was a finding that F. B. Laughlin held at the time of his death, as trustee for his wife, 792 of the 852 shares of stock mentioned in the bill, and a decree was made directing H. M. Laughlin, his administrator, to assign them to her. From this Stewart has appealed, and from the refusal to award her the remaining 60 shares the complainant has appealed.

The ownership of the 792 shares of stock was a pure question of fact. To establish it as against the creditors of the insolvent estate of her husband the burden was upon the appellee to show by clear and satisfactory evidence that, when the the securities were purchased by him, she had a separate estate, that it was used by him in purchasing them and that he purchased them for her. The proof of her ownership was of the degree required by the law, and, under it, there could not have been a finding that the stocks awarded to her belonged to her husband. It was not only clear and satisfactory, but consistent, and the appellant offered nothing to impeach it. A recital of the evidence is not needed in this opinion. The facts are of interest only to the parties concerned in the controversy, and it is sufficient for us to say that, standing unchallenged by any proof offered by the appellant, they made out a complete case for the appellee.

By his 7th, 14th, 15th and 16th assignments, the intervening defendant alleges error in admitting the testimony of S. M. McElroy and Samuel Bailey, Jr., as to alleged declarations by the decedent on the subject of his trusteeship for his wife. When the appellee sold her Penn avenue property in March, 1900, the vendee drew his check to her order for $90,500, which was the amount coming to her after the real estate agent's commissions had been paid. This check, the proceeds of which were found by the court to have been used for the purchase of nearly all the stocks awarded to the appellee, was handed to F. B. Laughlin, her husband, and by him indorsed, " M. B. Laughlin, F. B. Laughlin, Trustee," and deposited to his credit as trustee in the Citizens' National Bank of Pittsburg on March 3, 1900. When he made the deposit he consulted with McElroy, the cashier of the bank, stating that he

wanted to take care of this money for his wife. McElroy testified: " Mr. Laughlin explained to me the transaction, the sale of the property, and explained further that he wanted to take care of this business for Mrs. Laughlin, and asked advice as to how that account should be opened. I told him the proper way to open it would be to put it in Margaret B. Laughlin's name, he having a power of attorney to sign checks for her, or he could put it in the name of F. B. Laughlin, trustee, which would take it from any personal account, and it was not necessary to have a declaration of trust to be made for her for us, but I would advise one to be made outside. Whether he made one or not I do not know." Among the stocks found to have been purchased for Mrs. Laughlin are 75 shares of the McGraw Wool Company. A few days before his death Laughlin spoke to Bailey, a director of that company, about this stock. Bailey's testimony, the admission of which is also assigned as error, was: " A few days preceding the death of Mr. Laughlin he spoke to me about the stock, and said he held it as trustee for his wife, and that he wanted the stock transferred and a new certificate issued direct to her, that it ought to have been that way in the first place. I told him that Mr. Bickel, the secretary and treasurer of the company, was out of the city, and wouldn't return for a week. He said, 'There is no great hurry; I will give the certificate—have my son Harry bring the certificate to the office and have it transferred.' That conversation took place in Mr. Laughlin's room at the Hotel Kenmawr, on Sunday afternoon when I called on him." It is urged that the testimony of these two witnesses ought not to have been received, because the declarations of the husband were not competent evidence to show that the fund which came into his hands from the sale of his wife's real estate was in the nature of a trust to be administered by him for her. Mere loose declarations of a husband are not the proof required to establish a trust in him for his wife when his creditors contest it. In Gamber v. Gamber, 18 Pa. 363, on which the appellant seems to chiefly rely, it was said by BLACK, C. J.: " Declarations of an insolvent husband cannot, under any circumstances, be evidence for the wife." But it must be remembered that this was said at a time when a husband could not testify for his

wife, and could not, therefore, indirectly become a witness for her by having his declarations in her favor repeated by those to whom he had made them. It was, therefore, with this in view that it was further said: "The relation of husband and wife is so intimate, and the identity of their interests so absolute, that even the oath of one is not and ought not to be taken in favor of the other. A multo fortiori the naked declaration should be rejected." What McElroy and Bailey testified to was not merely what Laughlin had stated to them, but what he actually did and wanted done in connection with his management of his wife's estate, and their testimony was clearly admissible as proof of her present claim. For the refusal to receive proof of the declarations of a deceased husband that real estate belonged to his wife, in an action of ejectment brought by one claiming under her, we reversed in Nichols v. Nichols, 133 Pa. 438; and in Light v. Zeller, 144 Pa. 570, in a controversy between the wife and the sheriff's vendee of property sold as her husband's, the assignment of error was overruled which complained of the admission of the husband's declaration that the property in controversy belonged to his wife.

The decedent did not get the purchase money of his wife's property until March, 1900. He died in August, 1905, and this proceeding was instituted July 13, 1906. One of the questions raised by the appellant is as to her laches. The eighth finding of fact is that at the time of Laughlin's death, there were in a box, to which the appellee had the key, all the certificates claimed by her in her bill of complaint, as well as a number of others standing in her name and not in controversy; that with these certificates there was a statement in the handwriting of her husband, headed "List of Stocks and Notes of M. B. Laughlin and F. B. Laughlin, Trustee of M. B. Laughlin," with their value on April 1, 1901. With this admission of the trust by the husband, laches is not to be imputed to his wife, who filed her bill within less than a year from the time she became his widow. As to this feature of the case the court below very properly said: "She is old, has been bedridden for years, is now blind, and of frail mind. She had a right to assume that her husband, as agent and trustee, was preserving her property in her name."

The claim of the appellee to the 60 shares of Pittsburg Brewing Company stock was disallowed, because, in the opinion of the court, she had failed to show that they had been paid for out of her separate estate. It was incumbent upon her, in this controversy with her husband's creditor, to show that they had been so paid for before they could be declared to be hers, and we have not been persuaded that error was committed in holding that she had not brought to this item the measure of proof required. The assignments of error are all overruled. The decree is affirmed and each appeal dismissed with costs.